# REQUIRED STATEMENT
## TO ACCOMPANY MOTIONS FOR RELIEF FROM STAY

All Cases: Debtor(s) __John Barry Murphy__ Case No. __18-02597__ Chapter __13__

All Cases: Moving Creditor __Harper's Woods Condominiums__ Date Case Filed __01/30/2018__

Nature of Relief Sought: ☑ Lift Stay   ☐ Annul Stay   ☐ Other (describe) _____

Chapter 13: Date of Confirmation Hearing _____ or Date Plan Confirmed _____

Chapter 7: ☐ No-Asset Report Filed on _____
☑ No-Asset Report not Filed, Date of Creditors Meeting __05/15/18__

1. Collateral
   a. ☑ Home
   b. ☐ Car   Year, Make, and Model _____
   c. ☐ Other (describe) _____

2. Balance Owed as of Petition Date  $ __Unknown__
   Total of all other Liens against Collateral $ __Unknown__

3. In chapter 13 cases, if a post-petition default is asserted in the motion, attach a payment history listing the amounts and dates of all payments received from the debtor(s) post-petition.

4. Estimated Value of Collateral (must be supplied in *all* cases)  $ __156,000.00__

5. Default
   a. ☐ Pre-Petition Default
      Number of months ____   Amount $ _____
   b. ☑ Post-Petition Default
      i. ☑ On direct payments to the moving creditor
         Number of months ____   Amount $ __3,112.43__   + accruing assessments, charges, attorney's fees, and costs.
      ii. ☐ On payments to the Standing Chapter 13 Trustee
         Number of months ____   Amount $ _____

6. Other Allegations
   a. ☑ Lack of Adequate Protection § 362(d)(1)
      i. ☐ No insurance
      ii. ☐ Taxes unpaid   Amount $ _____
      iii. ☐ Rapidly depreciating asset
      iv. ☑ Other (describe) __Accruing lien for unpaid association assessments__
   b. ☑ No Equity and not Necessary for an Effective Reorganization § 362(d)(2)
   c. ☑ Other "Cause" § 362(d)(1)
      i. ☐ Bad Faith (describe) _____
      ii. ☐ Multiple Filings
      iii. ☑ Other (describe) __Default under Movant's Declarations__
   d. Debtor's Statement of Intention regarding the Collateral
      i. ☑ Reaffirm   ii ☐ Redeem   iii. ☐ Surrender   iv. ☐ No Statement of Intention Filed

Date: __April 2, 2019__

_____
Counsel for Movant

(Rev. 12/21/09)

Case 18-02597    Doc 52-2    Filed 04/02/19    Entered 04/02/19 15:33:21    Desc
Statement Accompanying Relief From Stay    Page 2 of 8

DATE: 4/01/19 TIME: 3:18 PM          **HARPERS WOODS CONDOMINIUMS**          Page: 2

**FINANCIAL TRANSACTIONS - 04/01/19**

27W258 Jefferson Ct.
John Barry Murphy-post
Unit ID: 66017
STATUS: 50 - Attorney Action
PREPAID BAL:     0.00

| DATE | PAYMT AMT | CHECK # | DEP DT | CODE | N/A | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|---|---|
| 010119 | | APPLY CHARGES | | A1 | | ASSESSMENT | 334.57 | 2033.72 |
| 010819 | | EXPENSE ADJ | | 05 | | Attorney Fees | 175.00 | 2208.72 |
| 012119 | | APPLY LATE FEE | | 01 | | Late Fees | 25.00 | 2233.72 |
| 020119 | | APPLY CHARGES | | A1 | | ASSESSMENT | 334.57 | 2568.29 |
| 022019 | | APPLY LATE FEE | | 01 | | Late Fees | 25.00 | 2593.29 |
| 030119 | | APPLY CHARGES | | A1 | | ASSESSMENT | 334.57 | 2927.86 |
| 032019 | | APPLY LATE FEE | | 01 | | Late Fees | 25.00 | 2952.86 |
| 040119 | | APPLY CHARGES | | A1 | | ASSESSMENT | 334.57 | 3287.43 |
| 1-8-19 | | | | | | Legal Fee - Transfer to PRE | (175.00) | 3,112.43 |
| 4-2-19 | | | | | | Legal Fee - Lift Stay | 881.00 | 3,993.43 |

DATE: 4/01/19 TIME: 3:18 PM           **HARPERS WOODS CONDOMINIUMS**           Page: 1

**FINANCIAL TRANSACTIONS - 04/01/19**

27W258 Jefferson Ct.
John Barry Murphy-post
Unit ID: 66017
STATUS: 50 - Attorney Action
PREPAID BAL:   0.00

| DATE | PAYMT AMT | CHECK # | DEP DT | CODE | N/A | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|---|---|
| 020118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 324.83 | 324.83 |
| 020218 | 1311.82 | 649 | 020218 | A1 | | ASSESSMENT | (1311.82) | (986.99) |
| 030118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 324.83 | (662.16) |
| 032018 | | APPLY LATE FEE | | 01 | | Late Fees | 25.00 | (637.16) |
| 040118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 324.83 | (312.33) |
| 041818 | | APPLY LATE FEE | | 01 | | Late Fees | 25.00 | (287.33) |
| 050118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 324.83 | 37.50 |
| 052118 | | APPLY LATE FEE | | 01 | | Late Fees | 25.00 | 62.50 |
| 060118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 324.83 | 387.33 |
| 062018 | | APPLY LATE FEE | | 01 | | Late Fees | 25.00 | 412.33 |
| 070118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 324.83 | 737.16 |
| 071818 | | APPLY LATE FEE | | 01 | | Late Fees | 25.00 | 762.16 |
| 080118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 324.83 | 1086.99 |
| 080718 | | EXPENSE ADJ | | 05 | | Attorney Fees | 231.31 | 1318.30 |
| 082018 | | APPLY LATE FEE | | 01 | | Late Fees | 25.00 | 1343.30 |
| 090118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 324.83 | 1668.13 |
| 090418 | 2330.29 | 4278504080 | 090418 | A1 | | ASSESSMENT | (1898.98) | (662.16) |
| 090418 | | | | 01 | | Late Fees | (200.00) | |
| 090418 | | | | 05 | | Attorney Fees | (231.31) | |
| 100118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 324.83 | (337.33) |
| 101918 | | APPLY LATE FEE | | 01 | | Late Fees | 25.00 | (312.33) |
| 110118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 324.83 | 12.50 |
| 112018 | | APPLY LATE FEE | | 01 | | Late Fees | 25.00 | 37.50 |
| 120118 | | APPLY CHARGES | | A1 | | ASSESSMENT | 324.83 | 362.33 |
| 121918 | | EXPENSE ADJ | | A1 | | ASSESSMENT | 1311.82 | 1674.15 |
| 121918 | Move 2/2/18 payment to pre account as per attorney | | | | | | | |
| 122118 | | APPLY LATE FEE | | 01 | | Late Fees | 25.00 | 1699.15 |

# DECLARATION OF CONDOMINIUM OWNERSHIP

## AND BY-LAWS

## EASEMENTS, RESTRICTIONS AND COVENANTS

## FOR

## HARPER'S WOODS CONDOMINIUMS

THIS DECLARATION made and entered into by

### GARY-WHEATON BANK

as Trustee under Trust Agreement dated April 21, 1986 and known as Trust No. 7403 and not individually, for convenience hereinafter referred to as the "Trustee":

### WITNESSETH THAT

WHEREAS, the Trustee is the legal title holder of the following described real estate situated in the Village of Winfield in the County of DuPage and State of Illinois:

Lots 1 and 2 in Harper's Woods Subdivision being a subdivision of Lots 1, 2, 3, 4, 5 and 6 in Slatin's Subdivision of part of the South East 1/4 of Section 13, Township 39 North, Range 9, East of the Third Principal Meridian, according to the Plat of said Subdivision recorded February 20, 1952 as document 645256 and re-recorded as document 674206, in DuPage County, Illinois. Said Harper's Woods Subdivision having been recorded August 26, 1986 as document R86-100553

WHEREAS, it is the desire and intention of the Trustee to enable the Property (as hereinafter defined) which includes, but is not limited to, said real estate together with the building, structure, improvements and other permanent fixtures of whatsoever kind now or hereafter thereon, and all rights and privileges belonging or in any way pertaining thereto be owned by Trustee and by each successor in interest of Trustee, under that certain type or method of ownership commonly known as "CONDOMINIUM" and to submit the Property to the provisions of the Condominium Property Act of the State of Illinois, as amended from time to time; and

WHEREAS, the Trustee, acting under direction of the parties authorized to direct the Trustee, has elected by this Declaration to establish, for the benefit of such Trustee and for the mutual benefit of all future Unit Owners or occupants of the Property, or any part thereof, which shall be known as HARPER'S WOODS CONDOMINIUMS or such other name as may be subsequently adopted pursuant to the Act by the Developer or the Board, certain

PREPARED BY AND MAIL TO:
THEODORE J. CACHEY, ATTORNEY
9961 WEST 151ST., ORLAND PARK, IL.

improvements shall have a valid easement for such encroachment and the maintenance and use thereof and such easement shall be in favor of the Trustee, the Developer and each of their respective successors or assigns.

## ARTICLE V

### COMMON EXPENSES, MORTGAGES AND REAL ESTATE TAXES

1. **Common Expenses.** Each Unit Owner shall pay his proportionate share of the Common Expenses of administration, maintenance and repair of the Common Elements and of any other expenses incurred in conformance with the Declaration and By-Laws or otherwise lawfully agreed upon. Such proportionate share of the common expenses for each Unit Owner shall be in the same ratio as his percentage of ownership in the Common Elements. Payment thereof shall be in such amounts and at such times as determined in the manner provided in the By-Laws. If any Unit Owner shall fail or refuse to make any such payment of the common expenses when due, the amount thereof shall constitute a lien on the interest of such Unit Owner in the Property as provided in the Act.

2. **Separate Mortgages.** Each Unit Owner shall have the right, subject to the provisions herein, to make a separate mortgage or encumbrance on his respective Unit together with his respective ownership interest in the Common Elements. No Unit Owner shall have the right or authority to make or create or cause to be made or created any mortgage or encumbrance or other lien on or affecting the Property or any part thereof, except only to the extent of his Unit and his respective ownership interest in the Common Elements.

3. **Separate Real Estate Taxes.** It is understood that real estate taxes are to be separately taxed to each Unit Owner for his Unit and his corresponding percentage of ownership in the Common Elements, as provided in the Act. In the event that for any year such taxes are not separately taxed to each Unit Owner but are taxed on the property as a whole, then each Unit Owner shall pay his proportionate share thereof in accordance with his respective percentage of ownership interest in the Common Elements.

4. The holder, insurer, or guarantor of the mortgage is entitled to timely written notice of:

    a) Any condemnation or casualty loss which affects either a material portion of the project or the unit securing the mortgage.

    b) Any 60 day delinquency in the payment of assessments or charges owed by the owner of any unit on which it holds the mortgage.

R87-52151

c) Any lapse, cancellation or material modification of any insurance policy maintained by the Association.

d) Any proposed action that requires the consent of a specified percentage of eligible mortgage holders.
(ie: amendment to documents; project termination)
(FNMA 411)

## ARTICLE VI

### INSURANCE

1. **Fire and Hazard Insurance.** The Board of Managers shall acquire as a common expense, a policy or policies of insurance insuring the Common Elements and the Units against loss or damage from fire, lightning and other hazards contained in the customary fire and extended coverage, vandalism and malicious mischief endorsements for the full insurable replacement value of the Common Elements and the Units written in the name of and to require a provision in such policy that the proceeds thereof shall be payable to the members of the Board, as trustees for each of the Unit Owners in the percentages established in Exhibit "B".

All said policies of insurance (1) shall contain standard mortgage clause endorsements in favor of the mortgagee or mortgagees of each Unit, if any, as their respective interest may appear, (2) shall provide that the insurance, as to the interest of the Board shall not be invalidated by any act or neglect of any Unit Owner, (3) shall provide that notwithstanding any provision thereof which gives the insurer an election to restore damage in lieu of making a cash settlement therefore, such option shall not be exercisable in the event the Unit Owners elect to sell the Property or remove the Property from the provisions of the Act, (4) shall contain an endorsement to the effect that such policy shall not be terminated for non-payment of premiums without at least ten (10) days prior to written notice to the mortgagee of each unit, (5) shall contain a clause endorsement whereby the insurer waives any right to be subrogated to any claim against the Association, its officers, members of the Board, the Trustee, the Developer, the managing agent, if any, their respective employees and agents and the Unit Owners and Occupants, and (6) shall contain a "Replacement Cost Endorsement". The proceeds of such insurance shall be applied by the Board or by the Corporate trustee or agent on behalf of the Board for the reconstruction of the Building or shall be otherwise disposed of, in accordance with the provisions of this Declaration and the Act; and the rights of the mortgagee of any Unit under any standard mortgage clause endorsement to such policies shall, notwithstanding anything to the contrary, therein contained at all times be subject to the provisions of the Act with respect to the application of insurance proceeds to reconstruction of the Building. The Board may engage the

Unit Owner. Upon ten (10) days notice to the Board and payment of a reasonable fee, any Unit Owner shall be furnished a statement of his account setting forth the amount of any unpaid assessments or other charges due and owing from such Unit Owner. All mortgagees of the units shall have the right to inspect the books at reasonable time or times during normal business hours.

6. **Use of Funds.** All funds collected hereunder shall be held and expended for the purpose designated herein and (except for such special assessments as may be levied hereunder against less than all the Unit Owners and for such adjustments as may be required to reflect delinquent or prepaid assessments) shall be deemed to be held for the benefit, use and account of all the Unit Owners in the percentage set forth in Exhibit "B".

7. **Insurance.** Any insurance premiums assessed on a basis reflecting increased charges for coverage on certain Units shall be assessed to such Unit Owner.

8. **Assessments.** If a Unit Owner is in default in the monthly payment of the aforesaid charges or assessments for thirty (30) days, the members of the Board may bring suit for and on behalf of themselves and as representatives of all Unit Owners, to enforce collection thereof or to foreclose the lien therefore as hereinafter provided; and there shall be added to the amount due the costs of said suit, and other fees and expenses together with legal interest and reasonable attorneys' fees to be fixed by the Court. To the extent permitted by any decision or any statute or law now or hereafter effective, the amount of any delinquent and unpaid charges or assessments, and interest, costs and fees as above provided, shall be and become lien or charge against the Unit Ownership of the Unit Owner involved when payable and may be foreclosed by an action brought in the name of the Board as in the case of foreclosure of liens against real estate. Such lien shall take effect and be in force when and as provided in the Act; provided, however, that encumbrances owned or held by any bank, insurance company, savings and loan association or other Lenders including all mortgage holders shall be subject as to priority after written notice to said encumbrancer of unpaid common expenses only to the lien of all common expenses on the encumbered Unit Ownership which become due and payable subsequent to the date the encumbrancer either takes possession of the Unit, accepts a conveyance of any interest in the Unit Ownership or has a receiver appointed in a suit to foreclose its lien, or obtains Judicial/Sheriffs Deed pursuant to termination of the redemption period. In addition to the foregoing, the Board or its agents shall have such other rights and remedies to enforce such collection as shall otherwise be provided or permitted by law from time to time. Without limiting the generality of the foregoing if any Unit Owner shall fail to pay the proportionate share of the Common Expenses or of any other expenses required to be paid hereunder when due, such rights and remedies shall

include: (1) the right to enforce the collection of such defaulting Unit Owner's share of such expenses (whether due by acceleration or otherwise), together with interest thereon, at the maxium rate permitted by law and all fees and costs (including reasonable attorney's fees) incurred in the collection thereof; (2) the right by giving such defaulting Unit Owner five days (5) written notice of the election of the Board so to do, to accelerate the maturity of the unpaid installments of such expenses accruing with respect to the balance of the assessment year.

9. <u>Nonuse.</u> No Unit Owner may waive or otherwise escape liability for the assessments provided for herein by nonuse of the Common Elements or abadnonment of his Unit.

### ARTICLE XVII

### COVENANTS AND RESTRICTIONS AS TO USE AND OCCUPANCY

The Units and Common Elements shall be owned, occupied and used subject to the following covenants and restrictions:

1. <u>General Use.</u> No part of the Property shall be used for other than housing and related common purposes for which the Property was designed. Each Unit or any two or more adjoining Units used together shall be used as a residence for a single family or such other uses permitted by this Declaration and for no other purpose. The part of the Common Elements separating any two or more adjoining Units used together as aforesaid may be altered to afford ingress and egress to and from such adjoining Units in such manner and upon such conditions as shall be determined by the Board in writing.

2. <u>Obstruction of Common Elements and Unit Maintenance.</u> There shall be no obstruction of the Common Elements nor anything be stored in the Common Elements, nor shall anything be stored in the Common Elements without prior consent of the Board except as herein expressly provided. This provision does not apply to the Village of Winfield with respect to easements granted to the Village. Each Unit Owner shall be obligated to maintain and keep in good order and repair his own Unit.

3. <u>Prohibited Use.</u> Nothing shall be done or kept in any Unit, or in the Common Elements which will increase the rate of insurance for residential use, without the prior written consent of the Board. No Unit Owner shall permit anything to be done or kept in his Unit, or in the Common Elements which will result in the cancellation of insurance on the Building, or contents thereof or which would be in violation of any law. No waste shall be committed in the Common Elements. No Unit Owner shall overload the electric wiring in the building, or operate any machines, appliance, accessories or equipment in such manner as to cause, in the judgement of the Board, an unreasonable

R87-52151